EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Electronic Games, Inc.; Avenue Auto Group, Corp.; Teddy Berríos Rivera; Mario Bravo Maisonave; C & R Entertainment Games, Corp.; C & K Entertainment Corp.; Félix A. Camacho Mena; Computer & Games, Inc.; Doble Seis Sport TV, Inc.; Empresas WW, Inc.; JL Entertainment, Corp.; L & C Entertainment Games, Corp.; L & J Entertainment, Inc.; LROD, Inc.; RBS Entertainments Group, Corp.; RE Rodríguez Enterprise Amusement Coin Machine, Inc.; Ricardo´s Entertainment, Corp.; Ramón Rivera Figueroa, SLROD, Inc.; W Games, Corp.; Zayas Entertainment, Corp.; R Lizardi Distribuitors, Inc.; Carlos Vega González; EY Entertainment, Inc.; Que Manera, Inc.; Antonio Colón Santiago; Emanuel Fuentes Ríos; Jesús M. Fuentes Figueroa; Carlos Rodríguez Echevarría; Raúl A. Sánchez Melo; Gustavo J. Ayala Mercado; Golden Gaming, Corp.<br><br>    Peticionarios<br><br>        v.<br><br>Compañía de Turismo de Puerto Rico; Comisión de Juegos del Gobierno de Puerto Rico<br><br>    Recurridos | Certiorari<br><br>2022 TSPR 25<br><br>208 DPR ____ |

Número del Caso: CC-2021-878


Fecha: 14 de marzo de 2022


Tribunal de Apelaciones:

    Panel V


Abogados de la parte peticionaria:

    Lcdo. José J. Gueits Ortiz
    Lcdo. Christian J. Francis Martínez


Abogados de los recurridos:

**Comisión de Juegos del Gobierno de Puerto Rico**

    Lcda. Tatiana Vallescorbo Cuevas
    Lcdo. Dennis Seilhamer Anadón
    Lcdo. Graciani Betancourt Pérez

**Compañía de Turismo de Puerto Rico**

    Lcdo. Félix A. Colón-Serrano

Materia: Resolución del Tribunal con Voto Particular de Conformidad y Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Electronic Games, Inc.; Avenue Auto Group, Corp.; Teddy Berríos Rivera; Mario Bravo Maisonave; C & R Entertainment Games, Corp.; C & K Entertainment Corp.; Félix A. Camacho Mena; Computer & Games, Inc.; Doble Seis Sport TV, Inc.; Empresas WW, Inc.; JL Entertainment, Corp.; L & C Entertainment Games, Corp.; L & J Entertainment, Inc.; LROD, Inc.; RBS Entertainments Group, Corp.; RE Rodríguez Enterprise Amusement Coin Machine, Inc.; Ricardo´s Entertainment, Corp.; Ramón Rivera Figueroa, SLROD, Inc.; W Games, Corp.; Zayas Entertainment, Corp.; R Lizardi Distribuitors, Inc.; Carlos Vega González; EY Entertainment, Inc.; Que Manera, Inc.; Antonio Colón Santiago; Emanuel Fuentes Ríos; Jesús M. Fuentes Figueroa; Carlos Rodríguez Echevarría; Raúl A. Sánchez Melo; Gustavo J. Ayala Mercado; Golden Gaming, Corp.<br><br>    Peticionarios<br><br>        v.<br><br>Compañía de Turismo de Puerto Rico; Comisión de Juegos del Gobierno de Puerto Rico<br><br>    Recurridos | CC-2021-0878 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de marzo de 2022.

Atendidas la *Urgente solicitud de reconsideración sobre expedición de certiorari y moción en auxilio de jurisdicción* que presentó la parte recurrida, y la *Oposición a moción urgente de reconsideración* y la *Moción urgente para que se le ordene al Director Ejecutivo de la Comisión de Juegos del Gobierno de Puerto Rico a mostrar causa por la cual no debe encontrársele incurso en desacato* que presentaron Electronic Games, Inc. y otros, se anula la expedición del auto de *certiorari*. A su vez, se deja sin efecto la paralización de

la implementación de los Reglamentos Núms. 9174 y 9175 de 5 de mayo de 2020.

Notifíquese.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Presidenta Oronoz Rodríguez emite la expresión siguiente:

"En este caso, de las comparecencias de las partes surge un conflicto fáctico y técnico en cuanto a si los peticionarios son operadores de las máquinas de juegos reguladas por los reglamentos impugnados, entre otros cuestionamientos. Debido a que ello va a la médula de la controversia sobre la legitimación activa de los peticionarios, hubiese emitido una Orden de Mostrar Causa para que las partes nos ilustraran sobre este particular por medio del requerimiento de información específica. Así, tras disipar las dudas sobre la capacidad de los peticionarios para recurrir ante nos, hubiésemos estado en mejor posición de determinar si procedía atender la controversia en los méritos o, en cambio, anular el auto.

Por otro lado, al anular el auto de *certiorari*, la mayoría del Tribunal también desatiende el señalamiento de los peticionarios a los efectos de que, a pesar de nuestra orden paralizando la implementación de los reglamentos impugnados, la Comisión de Juegos (Comisión) multó a un comerciante al amparo de estos. Para sustentar esa alegación, los peticionarios acompañaron una *Notificación de Infracción e Imposición de Multa* que emitió la Comisión el 14 de febrero de 2022. Ante este cuadro, hubiese emitido una Orden de Mostrar Causa en contra del Director Ejecutivo de la Comisión para que indicara la razón por la cual no debía ser hallado incurso en desacato por ignorar la orden que decretó este Tribunal paralizando la implementación de los reglamentos. Debimos expresarnos al unísono para condenar la conducta de la Comisión".

El Juez Asociado señor Martínez Torres emite un Voto Particular de Conformidad al que se une la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emite un Voto Particular Disidente. El Juez Asociado señor Colón Pérez no intervino.

Bettina Zeno González
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Electronic Games, Inc.; Avenue Auto Group, Corp.; Teddy Berrios Rivera; Mario Bravo Maisonave; C & R Entertainment Games, Corp.; C & K Entertainment, Corp.; Félix A. Camacho Mena; Computer & Games, Inc.; Doble Seis Sports, TV, Inc.; Empresas WW, Inc.; JL Entertainment, Corp.; L & C Entertainment Games, Corp.; L & J Entertainment Inc.; LROD, Inc.; RBS Entertainments Group, Corp.; RE Rodríguez Enterprise Amusement Coin Machine, Inc.; Ricardo's Entertainment, Corp.; Ramón Rivera Figueroa; SLROD, Inc.; W Games Corp.; Zayas Entertainment, Corp.; R Lizardi Distributors, Inc.; Carlos Vega González; Ey Entertainment, Inc.; Qué Manera Inc.; Antonio Colón Santiago; Emanuel Fuentes Ríos; Jesús M. Fuentes Figueroa; Carlos Rodríguez Echevarría; Raúl A. Sánchez Melo; Gustavo J. Ayala Mercado; Golden Gaming Corp.

Peticionarios

v.

Compañía de Turismo de Puerto Rico, Comisión de Juegos del Gobierno de Puerto Rico

Recurridos | CC-2021-0878 | |

Voto Particular de Conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES, al cual se unieron la Jueza Asociada señora PABÓN CHARNECO, el Juez Asociado señor RIVERA GARCÍA y el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 14 de marzo de 2022.

Una vez más me veo obligado a dejar el récord claro. La Resolución que hoy emitimos, lejos de ser obstinada e irreflexiva, fue extensamente ponderada. Como miembros de esta Curia siempre hay espacio para que se disienta, pero esto se debe hacer con respeto y sin imputar que el criterio mayoritario estuvo plagado de motivos ulteriores. Aquí no hay truco ni "movida".

La situación es bastante simple. Los peticionarios no demostraron que tienen legitimación para llevar este pleito. En múltiples ocasiones hemos dejado claro que la parte que solicita un remedio judicial **debe sustentar en todas las etapas** que: "(1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley". Hernández Montañez v. Parés Alicea, 2022 TSPR 14, 208 DPR __ (2022). Aunque estos criterios se deben interpretar de manera liberal y flexible cuando se trata de una acción en contra de las agencias gubernamentales, esto no implica que la puerta esté abierta de par en par para cualquier caso. Íd.; Pérez López v. Departamento de Corrección y Rehabilitación, 2022 TSPR 10, 208 DPR __ (2022); Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563, 573 (2010). El promovente debe demostrarle al tribunal que ostenta legitimación. Senado de Puerto Rico v.

Tribunal Supremo de Puerto Rico, 2021 TSPR 141, 208 DPR __ (2021); Ramos, Méndez v. García García, 203 DPR 379, 394 (2019); Bhatia Gautier v. Gobernador, 199 DPR 59, 69 (2017). Conviene recordar que el elemento de legitimación activa gira principalmente en torno a quién prosigue la acción y sólo secundariamente en cuanto a las cuestiones a adjudicar. Hernández Montañez v. Parés Alicea, supra.

A tono con esto, colegimos que los peticionarios no demostraron que han sufrido un daño claro, real y preciso. Sus alegaciones no fueron suficientes para concluir que tienen legitimación activa. Así, no se satisfizo el criterio jurisprudencial que se exige en todo pleito.

Por eso, no cabe hablar de que la mayoría de este Tribunal tuvo afán en anular el auto expedido. Por principios de justiciabilidad, nuestro proceder no podía ser otro. **Este principio nos impone el deber** de preguntarnos y evaluar si es apropiado entender en un caso determinado, tras auscultar si existe una controversia genuina entre partes opuestas con un interés real en obtener un remedio que afecte sus relaciones jurídicas. Hernández Montañez v. Parés Alicea, supra; Ramos, Méndez v. García García, supra; Torres Montalvo v. Gobernador ELA, 194 DPR 760, 766 (2016); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 931-932 (2011). La normativa que aplicamos aquí no es nueva; tampoco es sorpresiva.

Contrario a lo que expresa el compañero Juez Asociado Estrella Martínez, la ciudadanía sí tiene la capacidad para cuestionar actuaciones ilegales del Poder Ejecutivo. Sin embargo, las personas perjudicadas que cumplan con los requisitos clásicos de legitimación activa serán las llamadas a acudir al tribunal.

Por último, enfatizo que diferir de una determinación no equivale a que los demás no reflexionaron. El curso de acción que hoy tomamos no fue caprichoso ni obstinado. Nuestra decisión no fue una "movida". Disentir no puede ser excusa para socavar la credibilidad de este Tribunal, mucho menos para incurrir en exageraciones infundadas. La apertura que algunos pregonan y reclaman requiere que se acepte que se puede ser reflexivo y pensar distinto.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Electronic Games, Inc.; Avenue Auto Group, Corp.; Teddy Berríos Rivera; Mario Bravo Maisonave; C & R Entertainment Games, Corp.; C & K Entertainment, Corp.; Félix A. Camacho Mena; Computer & Games, Inc.; Doble Seis Sports, TV, Inc.; Empresas WW, Inc.; JL Entertainment, Corp.; L & C Entertainment Games, Corp.; L & J Entertainment Inc.; LROD, Inc.; RBS Entertainments Group, Corp.; RE Rodríguez Enterprise Amusement Coin Machine, Inc.; Ricardo's Entertainment, Corp.; Ramón Rivera Figueroa; SLROD, Inc.; W Games Corp.; Zayas Entertainment, Corp.; R Lizardi Distributors, Inc.; Carlos Vega González; Ey Entertainment, Inc.; Qué Manera Inc.; Antonio Colón Santiago; Emanuel Fuentes Ríos; Jesús M. Fuentes Figueroa; Carlos Rodríguez Echevarría; Raúl A. Sánchez Melo; Gustavo J. Ayala Mercado; Golden Gaming Corp.<br><br>Parte Peticionaria<br><br>v.<br><br>Compañía de Turismo de Puerto Rico, Comisión de Juegos del Gobierno de Puerto Rico<br><br>Parte Recurrida | CC-2021-0878 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 14 de marzo de 2022.

En una movida obstinada e irreflexiva, una mayoría de este Tribunal anula la expedición del auto de <u>certiorari</u> y deja sin efecto la paralización en auxilio de jurisdicción que decretamos sobre ciertos reglamentos adoptados por la Compañía de Turismo de Puerto Rico (Turismo), los cuales fueron impugnados por treinta y dos (32) demandantes (Peticionarios). Los tecnicismos inaplicables invocados por Turismo y la Comisión de Juegos de Puerto Rico (Comisión de Juegos) han movido a una mayoría de este Tribunal a tomar la excepcional medida de anular un auto. La corriente mayoritaria, en su afán con tal proceder, echa mano a la teoría de la supuesta falta de legitimación activa de los Peticionarios, acudiendo a una visión restrictiva de esa doctrina que, además, es contradicha con un simple examen del expediente.

**En consecuencia, la Mayoría valida, <u>sub silentio</u>, los actos <u>ultra vires</u> de la Comisión de Juegos al amparo de una reglamentación aprobada fuera de los márgenes de los procedimientos estatuidos en su ley habilitadora. Como agravante, con la anulación del recurso, este Tribunal deja pasar impunemente las actuaciones contumaces del Director Ejecutivo de la Comisión, quien, en abierto desafío a las órdenes de los tribunales, continuó implementando los reglamentos impugnados a pesar de que se decretó su paralización. Me niego a unirme a ese camino y avalar tal proceder.**

En cambio, reitero que los Peticionarios tienen legitimación activa, puesto que al momento de acudir al Poder Judicial estaban frente a un peligro potencial de sufrir un daño claro y palpable, el cual se fue constatando durante el transcurso del pleito. En consecuencia, hubiese reconocido su standing y, además, decretado la nulidad de los reglamentos en cuestión. Al ser otro el criterio mayoritario, disiento.

Veamos, entonces, el cuadro fáctico en el que surge esta controversia.

**I**

El 15 de julio de 2020, los Peticionarios instaron una Demanda de sentencia declaratoria en contra de Turismo y la Comisión de Juegos. En ella, impugnaron la legalidad del Reglamento para la fiscalización operacional e interconexión de máquinas de juegos de azar en ruta, Reglamento Núm. 9174 de la Compañía de Turismo, 5 de mayo de 2020 (Reglamento Núm. 9174) y del Reglamento para la expedición, manejo y fiscalización de licencias de máquinas de juegos de azar en ruta, Reglamento Núm. 9175 de la Compañía de Turismo, 5 de mayo de 2020 (Reglamento Núm. 9175). Estos alegaron ser operadores de máquinas de adultos, las cuales, por virtud de ley, tendrían preferencia para hacer la transición hacia máquinas de juegos de azar en ruta, industria recién legalizada en Puerto Rico. Sin embargo, adujeron que los reglamentos aplicables a tal transición incidían sobre sus derechos propietarios y, además, que Turismo no tenía la facultad para regular la industria recién creada, por lo que

los reglamentos eran nulos. Por lo anterior, solicitaron que el tribunal emitiera una sentencia declaratoria en la que dejara sin efecto los reglamentos precitados.

Tras varias incidencias procesales, el Tribunal de Primera Instancia resolvió que Turismo no tenía la facultad legal para promulgar ambos reglamentos. Esto, al concluir que esa entidad había perdido jurisdicción sobre la industria de juegos de azar en ruta al entrar en vigor la Ley de la Comisión de Juegos del Gobierno de Puerto Rico, infra. Dado lo anterior, declaró nulos ambos reglamentos.

Inconformes, las agencias gubernamentales acudieron ante el Tribunal de Apelaciones y solicitaron la revocación del dictamen del foro primario. Entre sus argumentos, adujeron que los Peticionarios no tenían legitimación activa, puesto que ninguno había demostrado haber sufrido un daño o la existencia de una potencial probabilidad de daño.

En respuesta, los Peticionarios afirmaron la existencia de un daño a consecuencia de las actuaciones ultra vires de Turismo y la Comisión de Juegos. Asimismo, reiteraron que estarían convirtiendo sus máquinas a unas de juegos de azar en ruta e incluso resaltaron que varios de los demandantes habían sido reconocidos como operadores de máquinas de este tipo de juegos.

No obstante, el foro apelativo intermedio revocó al de primera instancia al resolver que ninguno de los Peticionarios tenía legitimación activa. Ello al concluir que estos no habían demostrado la existencia de un daño claro

y real, por entender que de las alegaciones no se desprendía que los reglamentos impugnados le estuviesen causando perjuicio alguno.

Oportunamente, los Peticionarios acudieron ante este Tribunal mediante un certiorari. Ante nos, argumentaron que el Tribunal de Apelaciones erró al resolver que no tenían legitimación activa para impugnar los reglamentos en cuestión. Junto a ese recurso, acompañaron una Moción de auxilio de jurisdicción y solicitaron la paralización de la implementación de los reglamentos hasta tanto no atendiéramos los méritos de la controversia. Adujeron que no hacerlo les causaría un daño irreparable.

El 20 de enero de 2022, mediante una Resolución, expedimos el auto y concedimos la paralización de los Reglamentos Núms. 9174 y 9175, en lo que atendíamos la controversia. Sin embargo, las agencias recurridas solicitaron la reconsideración bajo el argumento de que los reglamentos fueron aprobados conforme a Derecho. Asimismo, adujeron que los Peticionarios no habían sufrido perjuicio alguno, puesto que no eran operadores de máquinas de juego de azar en ruta sino de otro tipo de máquinas regidas por reglamentación distinta a la impugnada en este pleito.

En su oposición, los Peticionarios argumentaron que su daño era evidente, dado a que, previo a la paralización de los reglamentos en controversia, la Comisión había comenzado a emitir multas a los operadores que no tuvieran las licencias requeridas. A su vez, resaltaron que la propia Comisión había

reconocido a varios de los Peticionarios como operadores bona fide de estas máquinas, por lo que era evidente que tenían standing para cuestionar los reglamentos que rigen su industria.[1]

De forma sorpresiva, una mayoría de los miembros de este Foro determinó que procedía anular la expedición del auto, curso de acción que, a mi juicio, nunca se justificó adecuadamente. En consecuencia, se revirtió la expedición del recurso y la paralización de los reglamentos impugnados. Por entender que tal curso de acción fue errado, procedo a explicar los fundamentos que orientan mi disenso.

Como cuestión de umbral, y dado a que el Tribunal de Apelaciones concluyó que los Peticionarios no tenían legitimación activa, estimo apropiado atender con preeminencia tal planteamiento antes de entrar a dilucidar la controversia en los méritos. Veamos.

**II**

Una controversia no es justiciable si el promovente de la acción carece de legitimación activa. Bajo esta doctrina, la parte demandante debe procurar que su interés sea "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". Ramos, Méndez v. García García, 203 DPR 379, 394 (2019). Para que se reconozca

---

[1]Por otro lado, mediante una Moción urgente, la parte peticionaria nos informó que la Comisión de Juegos había continuado implementando los reglamentos impugnados e impuesto multas a los comerciantes que no cumplieran con estos posterior a la paralización ordenada por este Tribunal.

legitimación activa a una parte, esta debe establecer que: (1) ha sufrido un daño claro y palpable; (2) que el daño referido es real, inmediato y preciso; (3) que hay una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surge al amparo de la Constitución o de una ley. Bhatia Gautier v. Gobernador, 199 DPR 59, 69 (2017); Col. Peritos Elec. v. A.E.E., 150 DPR 327, 331 (2000).

Ahora bien, cuando se trate de una acción contra las agencias y los funcionarios gubernamentales, los requisitos precitados deben interpretarse flexible y liberalmente. Asoc. de Maestros v. Srio. de Educación, 156 DPR 754, 765 (2002). Es decir, el análisis de las alegaciones se debe hacer de la manera más favorable y liberal para el promovente del litigio. Ramos, Méndez v. García García, supra, pág. 395. Ello, pues, el factor determinante no es quién es el promovente, sino en contra de quien se entabló la causa de acción. Hernández Montañez y otros v. Parés Alicea y otros, 2022 TSPR 14, 208 DPR __ (2022) (Opinión disidente del Juez Asociado Señor Estrella Martínez).

A la luz de tales lineamientos doctrinales, considero que **todos** los Peticionarios tienen legitimación activa para impugnar los reglamentos en cuestión **en su aplicación** a través del mecanismo de sentencia declaratoria. Me explico.

Con la entrada en vigor del Código de Rentas Internas para el nuevo Puerto Rico, Ley Núm. 257-2018, 13 LPRA sec. 30001 et seq. (Ley Núm. 257), se introdujeron enmiendas

significativas a la <u>Ley de Máquinas de Juegos de Azar</u>, Ley Núm. 11 de 22 de agosto de 1933, 15 LPRA 82 <u>et seq.</u>, dirigidas a autorizar, de forma limitada, la operación de máquinas de juego de azar en ruta o tragamonedas en Puerto Rico. En lo pertinente, mediante esta última ley se estableció que tendrían prioridad para obtener las licencias de máquinas de juego de azar en ruta "aquellas empresas o individuos que tuvieran vigentes licencias de máquinas de entretenimiento de adultos". Sec. 10 de la <u>Ley de Máquinas de Juegos de Azar</u>, <u>supra</u>, 15 LPRA sec. 84f.

Es en este contexto que los Peticionarios instaron su causa de acción. Así, adujeron que, por disposición de la Ley Núm. 257, tenían prioridad para obtener las licencias como operadores de máquinas de juegos de azar en ruta y que, como consecuencia de la implementación de los reglamentos impugnados varios de estos quedaron fuera de la industria. **Además, sostuvieron que la reglamentación promulgada por Turismo era <u>ultra vires</u>, en primer lugar, por coartar sus derechos propietarios y, en segundo lugar, por sujetarlos al cumplimiento de un procedimiento administrativo que Turismo no tenía autoridad legal para regular.**

Nótese que de las alegaciones de la <u>Demanda</u> se desprende que los Peticionarios estaban ante un peligro potencial de sufrir una acción adversa por parte de la Comisión de Juegos. De hecho, ese daño era tan inminente y real que se fue constatando paralelamente a los procedimientos judiciales al punto de que la Comisión de Juegos, apenas una (1) semana

después de la Sentencia del Tribunal de Primera Instancia, continuó actuando al amparo de los reglamentos en controversia. En específico, emitió una comunicación en la que anunció la certificación, durante el primer trimestre de 2021, de los primeros cien (100) operadores de máquinas de juego de azar en ruta, a los que les requirió el pago de $1,500 por cada máquina como condición para obtener las licencias de operadores.[2] Este patrón continuó mientras el caso estaba en el trámite apelativo pues, el 19 de agosto de 2021, la Comisión de Juegos emitió otra comunicación requiriendo el pago de las licencias, so pena de multas y sanciones criminales a quienes no se sometieran a sus directrices.[3]

Adviértase, es patente y manifiesto el reiterado desafío de la Comisión de Juegos a las órdenes de los tribunales. De igual forma, nótese que, de las comunicaciones precitadas, se desprende la aplicación de los reglamentos impugnados a la parte peticionaria que, como hemos expuesto, tenían un turno preferente para solicitar las licencias de operadores de máquinas de juego de azar en ruta. Debido a que no se respetó

---

[2]Apéndice del recurso de certiorari, Comunicación de la Comisión de Juegos a todos los dueños mayoristas u operadores de juegos en ruta Re: Recaudo del pago de las licencias de las máquinas de juego de azar en ruta de los dueños mayoristas u operadores cursada el 23 de julio de 2021, págs. 275-276.

[3]Apéndice del recurso de certiorari, Comunicación de la Comisión de Juegos a todos los dueños mayoristas u operadores de juegos en ruta Re: Recaudo del pago de las licencias de las máquinas de juego de azar en ruta de los dueños mayoristas u operadores (Modificado), págs. 691-692.

el mandato legal del turno preferente, ello potencialmente ocasionó que las compañías que no tenían tal preferencia obtuvieran licencias en detrimento de varios de los aquí Peticionarios.[4] Lo anterior, con la consecuencia de habérsele impedido de participar en la industria de juegos de azar en ruta a pesar del turno preferente dispuesto por ley. Sec. 10 de la Ley de Máquinas de Juegos de Azar, supra, 15 LPRA sec. 84f. Dado este cuadro fáctico, es evidente que dichas acciones materializan el daño real, inmediato y preciso al que estaba —y continúa estando— sujeto la parte peticionaria.

En ese sentido, al aplicar los criterios doctrinales de forma liberal y flexible por tratarse de una acción instada contra unas agencias gubernamentales, es forzoso concluir que los Peticionarios satisfacen los criterios de la doctrina de legitimación activa.

Por tanto, es justificado el uso de la sentencia declaratoria como medio para neutralizar las acciones concretas de la Comisión de Juegos. Ello, al tratarse de un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un **peligro potencial** contra quien la solicita". (Negrillas suplidas). Senado de PR v. ELA, 203 DPR 62, 71 (2019) (citando a Alcalde Guayama v. ELA, 192 DPR 329, 333 (2015)). De igual modo, éste "es adecuad[o] para declarar derechos, estados y otras relaciones

---

[4]Petición de certiorari, págs. 12-13.

de naturaleza jurídica independiente que existan otros remedios". <u>Alcalde Guayama v. ELA</u>, supra, pág. 333. A esos efectos, la sentencia declaratoria es particularmente útil para "dilucidar cualquier divergencia de criterio en la interpretación de un estatuto cuando existe una controversia sustancial entre partes con intereses legales adversos". Íd. Según hemos visto, al momento de instar su reclamación judicial inicial, existía un **peligro potencial** para los Peticionarios, el cual precisamente, constituye el criterio jurisprudencial exigido.

Por otro lado, si lo anteriormente expuesto no fuera suficiente para reconocer la legitimación activa de los Peticionarios, persiste el planteamiento de que diez (10) de estos han sido reconocidos como operadores <u>bona fide</u> de máquinas de juegos de azar en ruta.[5] Ello claramente disipa cualquier cuestionamiento en cuanto a su legitimación activa. Obstinadamente, la postura mayoritaria, opta por ignorar este extremo. Por tanto, la contención de que ninguno de los Peticionarios ostenta legitimación activa es errada, carece de evidencia fáctica y está despojada de referencia expresa al expediente del caso.

---

[5] Estos son: L & J Entertainment, Inc.; Antonio Colón Santiago; Doble Seis Sport, TV, Inc.; Golden Gaming, Corp.; Ramón Rivera Figueroa; Empresas WW, Inc.; W Games, Corp.; Ricardo's Entertainment, Corp.; RE Rodríguez Enterprise Amusement Coin Machine, Inc. y L & C Entertainment Games, Corp. **Resáltese que este extremo no ha sido negado por la Comisión de Juegos en alguna de sus comparecencias ante el Tribunal.**

Establecida la legitimación activa de los Peticionarios, procedemos a detallar los fundamentos por los cuales decretaría la nulidad de los Reglamentos Núms. 9174 y 9175.

**III**

Según se expuso, a través de la Ley Núm. 257, supra, las máquinas de juegos de azar en ruta o tragamonedas fueron legalizadas en nuestra jurisdicción. Inicialmente, la responsabilidad de reglamentar esa industria recayó sobre Turismo. No obstante, un (1) año más tarde, específicamente en el 2019, la Asamblea Legislativa aprobó la Ley de la Comisión de Juegos del Gobierno de Puerto Rico, Ley Núm. 81-2019, 15 LPRA sec. 981 et seq. (Ley Núm. 81) y, con ello, consolidó en una sola entidad gubernamental todo lo concerniente a la industria de juegos en Puerto Rico: la Comisión de Juegos. Véase, Exposición de Motivos de la Ley Núm. 81, supra (2019 [parte 2] Leyes de Puerto Rico 1416, 1424-1426). En consecuencia, a esta se le transfirió la facultad que antes ostentaba Turismo para ejercer autoridad sobre la industria de juegos en esta jurisdicción. **Entiéndase, con la entrada en vigor de esta Ley, es la Comisión de Juegos la única entidad facultada para aprobar reglamentación conducente a establecer el procedimiento de otorgación de las licencias para su operación y la fiscalización de los operadores de máquinas de juegos de azar en ruta.** Sec. 10 de la Ley de Máquinas de Juegos de Azar, supra, 15 LPRA sec. 84f.

En contravención con este claro mandato de ley, el 5 de mayo de 2020, Turismo aprobó los Reglamentos Núms. 9174 y 9175 los cuales reglamentan la concesión, fiscalización e interconexión de las máquinas de juego de azar en ruta. **Entiéndase, Turismo aprobó estos reglamentos casi un (1) año luego de haber perdido jurisdicción sobre esta industria.** Como agravante, la Ley Núm. 81, solo autoriza a la Comisión de Juegos a adoptar aquellos reglamentos, promulgados por Turismo, **que estuvieran vigentes al momento** de entrar en vigor el estatuto. Art. 7.3 de la Ley Núm. 81, supra, 15 LPRA sec. 982a. Ciertamente, los reglamentos aludidos no cumplen con este requisito.

Habida cuenta de lo anterior, es claro que ambos reglamentos son nulos por haber sido aprobados por una agencia sin la autoridad legal para ello. Sin embargo, al rehusarse a reconocer la legitimación activa a los Peticionarios, una Mayoría de este Tribunal, sub silentio, permite desacertadamente que la Comisión de Juegos continúe aplicando dichos reglamentos a pesar de su evidente nulidad, con las consecuencias nocivas a los Peticionarios y al interés público que ello implica.

**IV**

En definitiva, reitero que los Peticionarios tienen legitimación activa, pues están sufriendo un daño claro y palpable al estar compelidos a cumplir con una reglamentación promulgada por una agencia sin autoridad legal para ello. En ese sentido, están a la merced de una reglamentación aprobada

en contravención a la ley habilitadora de la Comisión de Juegos. Este daño es real, inmediato y preciso en la medida que la reglamentación impugnada incide adversamente sobre su operación comercial al requerir solicitar y obtener licencias para operar sus negocios por medio de un proceso administrativo nulo. Ante tal situación, resulta claro que no nos encontramos frente a asuntos abstractos e hipotéticos. No reconocer la legitimación activa de los Peticionarios implica que estos no pueden exigir que la agencia con autoridad sobre su industria cumpla con el mandato legislativo instituido en la Ley Núm. 81, supra.

**Recientemente, en Hernández Montañez y otros v. Parés Alicea y otros, supra, una mayoría de este Tribunal falló en reconocerle legitimación activa a los legisladores ante una actuación del Ejecutivo que afectaba sus prerrogativas y funciones constitucionales. Aunque sostuve que estos tenían legitimación para impugnar tal actuación del Ejecutivo, se pautó que el poder para impugnar ese proceder le correspondía a la ciudadanía. A pesar de ello, en este caso los Peticionarios, o sea, la ciudadanía, acuden en busca de auxilio al Poder Judicial con el propósito de vindicar otra actuación del Ejecutivo contraria a la ley. En cambio, ahora tampoco la ciudadanía tiene capacidad para cuestionar una actuación ilegal del Ejecutivo. La contradicción es evidente y solo demuestra el cierre hermético del candado que, progresivamente, este Tribunal implanta, mal utilizando la doctrina de la legitimación activa.**

Lastimosamente, hoy una mayoría de este Tribunal valida las actuaciones <u>ultra vires</u> de Turismo, las cuales han coartado el poder de la Comisión de Juegos para reglamentar la industria de juegos en Puerto Rico. De igual forma, desatienden los graves incumplimientos del Director Ejecutivo de la Comisión de Juegos, quien consistente y abiertamente desafió las órdenes emitidas por el Poder Judicial durante el transcurso de este litigio. Ante ese cuadro, disiento.


                                  Luis F. Estrella Martínez
                                        Juez Asociado